**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1942-18T2

MARIE ANDRADE,

    Plaintiff-Appellant,

v.

GUSTAVO ANDRADE,

    Defendant-Respondent.

_____

Submitted March 10, 2020 – Decided April 30, 2020

Before Judges Messano and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. C-000189-17.

Celentano Stadtmauer & Walentowicz LLP, attorneys for appellant (Henry C. Walentowicz, on the brief).

Gustavo Andrade, respondent pro se.

PER CURIAM

    In 2012, plaintiff Maria Andrade, then seventy-three-years old, executed a deed transferring her home in Jersey City to her son, defendant Gustavo

Andrade, for a nominal fee, and reserving a life estate in her favor. In December 2017, plaintiff filed a verified complaint and order to show cause seeking to set aside the deed, claiming defendant unduly influenced her into transferring the property to him. The General Equity judge conducted a bench trial at which plaintiff, defendant, and the attorney who prepared and filed the deed, testified. The judge concluded that plaintiff failed to prove she and defendant "shared a confidential relationship and that there were suspicious circumstances surrounding the transfer of the premises[.]" Alternatively, the judge found that defendant had rebutted any presumption of "undue influence" by clear and convincing evidence. He entered an order dismissing the complaint, and this appeal followed.

Before us, plaintiff contends the judge's findings are not supported by the credible evidence at trial. She also argues that she lacked any donative intent when she transferred title to defendant.

We have considered these arguments in light of the record and applicable legal standards. Although the judge failed to specifically address the issue of donative intent, we conclude his detailed findings of fact and conclusions of law implicitly provide support for the conclusion that plaintiff intended to make an

inter vivos gift to her son.  The trial judge's other findings and conclusions are supported by substantial credible evidence in the record, and we affirm.

## I.

We begin by acknowledging the standards that guide our review and by setting the intertwined framework of critical legal determinations that control resolution of any challenge to the validity of an inter vivos gift.

"We review the trial court's determinations, premised on the testimony of witnesses and written evidence at a bench trial, in accordance with a deferential standard."  D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013).

> Final determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review: "we do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]"
>
> [Ibid.  (quoting Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)).]

"To the extent that the trial court interprets the law and the legal consequences that flow from established facts, we review its conclusions de novo." Motorworld, Inc. v. Benkendorf, 228 N.J. 311, 329 (2017) (citing D'Agostino, 216 N.J. at 182).  These standards of review apply in circumstances like those

presented here where a purported inter vivos gift is challenged. <u>Pascale v. Pascale</u>, 113 N.J. 20, 33 (1988).

"There are three elements of a valid and irrevocable gift." <u>Bhagat v. Bhagat</u>, 217 N.J. 22, 40 (2014).

> First, there must be actual or constructive delivery; that is, "the donor must perform some act constituting the actual or symbolic delivery of the subject matter of the gift." Second, there must be donative intent; that is, "the donor must possess the intent to give." Third, there must be acceptance.
>
> [<u>Ibid.</u> (quoting <u>Pascale</u>, 113 N.J. at 29).]

Although the party asserting the transfer was a gift has the burden of proof as to these elements, when "the transfer is from a parent to a child . . . a presumption arises that the transfer is a gift. The presumption does not apply if the parent is a dependent of the child." <u>Id.</u> at 41–42. Additionally, the putative donor may overcome the presumption through <u>clear and convincing evidence</u> "limited to evidence antecedent to, contemporaneous with, or immediately following the transfer." <u>Id.</u> at 47.

"An adult donor is generally presumed to be competent to make a gift." <u>Pascale</u>, 113 N.J. at 29. However, plaintiff here alleged the deed transfer was not the product of her free will, but, rather, the result of undue influence. "Undue influence has been described as 'that sort of influence that prevents the

4

person over whom it is exerted "from following the dictates of his own mind and will and accepting instead the domination and influence of another."'" In re Estate of DeFrank, 433 N.J. Super. 258, 269 (App. Div. 2013) (quoting Pascale, 113 N.J. at 30). "In respect of an inter vivos gift, a presumption of undue influence arises when the contestant proves that the donee dominated the will of the donor, or when a confidential relationship exists between donor and donee[.]" Pascale, 113 N.J. at 30 (citations omitted).[1]

---

[1] Although the trial judge analyzed whether there were "suspicious circumstances" surrounding the transfer in addition to the existence of a "confidential relationship," and although plaintiff on appeal addresses the trial evidence as to both findings, the Court has said:

> [w]ith respect to a will, to create a presumption of undue influence[,] the contestant . . . must show the existence not only of a confidential relationship, but also "suspicious circumstances," however "slight." Without proof of suspicious circumstances, a confidential relationship will not give rise to the presumption in the testamentary context. Underlying the absence of a requirement of showing suspicious circumstances with an inter vivos gift is the belief that a living donor is not likely to give to another something that he or she can still enjoy.
>
> [Id. at 30–31 (emphasis added) (citations omitted) (quoting Haynes v. First Nat'l Bank, 87 N.J. 163, 176 (1981)).]

A-1942-18T2

"Among the most natural of confidential relationships is that of parent and child." Id. at 34 (citing In re Fulper, 99 N.J. Eq. 293, 314 (Prerog. Ct. 1926)). However, "the mere existence of family ties does not create . . . a confidential relationship." Estate of Ostlund v. Ostlund, 391 N.J. Super. 390, 401–02 (App. Div. 2007) (quoting Vezzetti v. Shields, 22 N.J. Super. 397, 405 (App. Div. 1952)). Simply put,

> the test for measuring the existence of a confidential relationship is "whether the relations between the parties are of such a character of trust and confidence as to render it reasonably certain that one party occupied a dominant position over the other and that consequently they did not deal on terms and conditions of equality."
>
> [Id. at 402 (quoting Blake v. Brennan, 1 N.J. Super. 446, 453 (Ch. Div. 1948)).]

To determine "whether a confidential relationship is present[,]" the following factors must be considered:

> [(1)] whether trust and confidence between the parties actually exist[; (2)] whether they are dealing on terms of equality[; (3)] whether one side has superior knowledge of the details and effect of a proposed transaction based on a fiduciary relationship[; and (4)] whether one side has exerted over-mastering influence

In other words, if plaintiff demonstrated she shared a "confidential relationship" with her son, she did not need to prove the deed transfer occurred under "suspicious circumstances" in order to benefit from the presumption that defendant exerted undue influence.

A-1942-18T2

over the other or whether one side is weak or dependent.

[Id. at 402.]

"When the presumption of undue influence arises from an inter vivos gift, the donee has the burden of showing by clear and convincing evidence not only that 'no deception was practiced therein, no undue influence used, and that all was fair, open and voluntary, but that it was well understood.'" Pascale, 113 N.J. at 31 (quoting In re Dodge, 50 N.J. 192, 227 (1967)). The donee's burden becomes particularly onerous if the donor is dependent upon the donee, and the gift leaves the donor without any assets or unable to support herself. Ibid.

We consider the judge's factual findings and conclusions given this intertwined legal framework.

II.

Our summary of the trial testimony relies on the judge's expressed factual findings and gives due consideration to the judge's detailed credibility determinations based, in part, on his observations of the witnesses' demeanor. The judge found plaintiff's testimony lacked credibility, and defendant's testimony was highly credible.

The property consisted of three floors, with plaintiff, a widow, occupying the first, and tenants occupying the second and third. Plaintiff had four children,

two sons and two daughters, who are estranged from each other. Defendant lived in the basement, performed substantial repairs on the property without compensation and paid $100 per week to plaintiff in rent. Plaintiff and her husband, who died in 1993, deeded the property to one daughter in 1991; the daughter transferred the property back four years later. Yet again, in 2010, plaintiff consulted an attorney who, at her request, drew up a deed to convey the property to the same daughter for nominal consideration; however, plaintiff requested the lawyer not record the deed and it was never recorded.

The same attorney, who testified at trial, drew up the 2012 deed conveying the property to defendant and reserving a life estate for plaintiff's benefit. Further, the attorney testified that plaintiff was completely lucid and controlled the meeting, with defendant saying little. The attorney testified that plaintiff consulted him six months later, asking to have the house returned because she was "having difficulty with" her son.

The judge found that defendant reported the rental income from the tenants on his tax returns and claimed plaintiff as a dependent. Although defendant has a daughter himself, he named plaintiff as the sole beneficiary under his will, and a sister as alternate beneficiary.

A-1942-18T2

The judge concluded that other than proving the indisputable — that defendant was her son — plaintiff failed to prove a "confidential relationship" existed between the two. He found that plaintiff was "a shrewd person who was aware of the nature and objects of her bounty[] and made deliberate decisions about the disposition of her real property for calculated purposes." The judge noted plaintiff's testimony that she transferred the property to her daughter earlier "to protect that asset from any loss 'to the government.'" The judge found that when plaintiff made her later decision to transfer the property to defendant, "she was certainly aware (if not ultimately misinformed) about the reasons why she was taking the action that she did."

The judge noted that defendant asked his mother to transfer the property to him, but the requests were not "made in such a way as to force the asset's transfer." The judge specifically found that plaintiff and defendant "were able to, and did, live independently from each other and there was no proof . . . that [plaintiff] was so dependent upon the presence and involvement of her son for her own livelihood." The judge concluded plaintiff "stood in a more dominant position over her son."

Plaintiff contends the evidence of domination was to the contrary, noting that defendant accompanied her to the attorney's office, prepared her tax returns

9

and declared plaintiff as a dependent on his own returns, and received the only sizeable asset of plaintiff's estate, to the detriment of her other children. However, we defer to the trial judge's ability to observe the witnesses, in particular their demeanor and the manner in which they answered questions. Plaintiff bore the burden of proving "the existence of a confidential relationship, [was] more probable than not." Ostlund, 391 N.J. Super. at 403 (citing Biunno, Current N.J. Rules of Evidence, cmt. 5 on N.J.R.E. 101(b)(1) (2007)). The judge's conclusion that she failed to meet this burden is supported by "the competent, relevant and reasonably credible evidence" and does not "offend the interests of justice[.]" D'Agostino, 216 N.J. at 182 (alteration in original).

As already noted, the judge failed to explicitly find that plaintiff intended to make a gift to her son by transferring the property while retaining a life estate. Plaintiff contends the evidence demonstrates a lack of "donative intent" on her part, because she continued to collect the tenants' rents and pay for expenses associated with the property, and her will left the property to her four children.[2]

Although the judge failed to make explicit findings on this point, we conclude the finding of donative intent is implicit when one considers the

---

[2] We note that plaintiff's testimony about her last will was quite sketchy and lacking in any detail. The will was not produced at trial, and plaintiff had no idea where it was.

entirety of the judge's written decision. For example, the judge noted that "[plaintiff] was in complete control of the disposition of her property from [its] initial transfer in 1991, to the retransfer in 1995, to the requested transfer in 2010, and to the subject transfer in 2012." The judge found that plaintiff made the transfer

> to compensate [defendant] for the work [he] performed on the premises and for the benefit of his mother. . . . That work was substantial and involved almost a complete renovation of the premises. It was a reasonable (and uncontroverted) position that [plaintiff] would seek to reward her son for the work that he contributed to this asset, particularly since [plaintiff] provided similar assistance to her other children.

There is no reason to disturb these findings, which amply support a presumption that the transfer was an inter vivos gift from plaintiff to defendant, her son. See Bhagat, 217 N.J. at 41. As the Court made clear

> a person who has transferred property to another, which raises a presumption that the transferred property was a gift, must meet the clear and convincing evidence standard of proof to rebut the presumption. We also hold that the person seeking to rebut the presumption is limited to evidence antecedent to, contemporaneous with, or immediately following the transfer.

> [Id. at 47 (emphasis added).]

A-1942-18T2

There was no credible evidence to rebut the presumption, other than plaintiff's admitted consultation with the attorney to undo the transfer six months later because of unspecified difficulty with defendant. We reject plaintiff's argument that the evidence failed to demonstrate that when the transfer was made, it lacked a donative intent.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1942-18T2